UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: _____

MICHELLE ESPIDO,
    Plaintiff,

vs.

FLANIGAN'S ENTERPRISES, INC.,
A Florida corporation
    Defendant.
_____/

**AMENDED COMPLAINT**

    The Plaintiff, Michelle Espido, sues the Defendant, Flanigan's Enterprises, Inc., a Florida corporation, for sex discrimination and retaliation, in violation of Title VII of the Civil Rights Act.

**Jurisdiction and Venue**

1. This Court has jurisdiction under the Civil Rights Act of 1964 pursuant to 42 U.S.C. §2000e <u>et seq.</u> ("Title VII").

2. Venue is appropriate in this district under 28 U.S.C. §1391 as a substantial part of the events giving rise to the claim occurred in Broward County, Florida.

**Parties**

3. At all times material hereto, the Plaintiff, Michelle Espido ("Espido"), was and is a Broward County, Florida resident, and worked at the Defendant's Davie restaurant, which is in Broward County, Florida.

1

4. Defendant Flanigan's Enterprises, Inc., ("Flanigan's" or the "Defendant"), a Florida corporation listed on the NYSE MKT (formerly known as the American Stock Exchange) as symbol BDL, is headquartered in Fort Lauderdale, Florida and operates a chain of full-service restaurants and package liquor stores in south Florida, with nearly 900 fulltime employees.

### Factual Background

5. Michelle Espido is a female who began working for Flanigan's in their Davie location as a server in December 2005.

6. Ms. Espido was a long-time employee and server at the Flanigan's restaurant in Davie, Florida. She was employed by the Flanigan's since December 2005 and had no history of negative evaluations or disciplinary actions. She was well-liked by her fellow staff members and had regular clientele, including local business owners, who witnessed the harassment and subsequent retaliation by Flanigan's coworkers and supervisors against Ms. Espido that ultimately resulted in her termination.

7. Ms. Espido was repeatedly subjected to aggressive sexual harassment and unwanted advances by a manager and then retaliated against by Flanigan's after she made a formal complaint to both their corporate headquarter and the EEOC. Ms. Espido was fired on March 7, 2012.

8. The Kitchen Manager, Jose Munoz, had made multiple comments in front of witnesses and gestured directly to Ms. Espido and to other staff members about her that were sexually aggressive and harassing. Munoz stated he wanted to "smell her [Ms. Espido's] panties" and to "eat her [Ms. Espido's] dirty

2

tampons." Further, Munoz made comments regarding Ms. Espido's anatomy, specifically her breasts, and stated that she "distracted" his kitchen staff because she "was different" from the other servers physically. There were multiple witnesses to these occurrences including staff, management, and customers.

9. Ms. Espido had requested of her manager Rick for her schedule to be altered to assist her in avoiding Munoz, however Munoz continued to visit the store even during his time off to harass, stalk and watch Ms. Espido while she worked, all the while making crude and degrading comments in front of the staff members and customers. Though Munoz's behavior was unwelcomed and unwanted, and though Ms. Espido had made multiple requests for his advances to cease directly to Munoz and to both in-store management and Flanigan's corporate office, she was left not only without protection from her employer, but was retaliated against by Flanigan's because she formally complained to the EEOC and they ultimately terminated her.

10. On October 25, 2011, Ms. Espido sent a written notice of harassment to the Defendant's corporate office at the suggestion of Claire Kaufman, the Human Resources Manager. This letter was faxed by Ms. Espido upon request by Ms. Kaufman after their multiple telephonic conversations in which Ms. Espido detailed the harassment by Munoz. The letter was signed and witnessed by other staff members including Dominique Tavarez, Amanda Burrage and Samantha Woods. Ms. Kauffman assured Ms. Espido that she would not be retaliated against for making a formal complaint as the latter was afraid for her

      job security after local management was unable to control Munoz's behavior, and his anger and sexual comments were increasing in intensity.

11. The formal written complaint to Flanigan's corporate office however, went unanswered and unacknowledged for weeks. The harassment and advances by Munoz continued against Ms. Espido, and the assurance of no retaliation made by Ms. Kaufman was false. Now, not only was Ms. Espido openly retaliated against, but so were her colleagues that signed as witnesses.

12. When Ms. Espido's formal complaint was not addressed by the Defendant within a month's time, she then submitted a complaint through the EEOC. It was approximately one month after the Ms. Espido made her formal complaint to the corporate office, and upon Flanigan's receipt of the EEOC complaint, that the corporate office finally "investigated" her allegations and her repeated requests for help.

13. Terri Cecil, Kitchen Operations Supervisor, Flanigan's corporate representative in this matter, arranged a meeting and arrived at the Davie restaurant to interview Ms. Espido in front of the restaurant's general manager Elaina Gomez, and the male assistant general manager.

14. Ms. Cecil asked Ms. Espido if she wrote the complaint letter, if it was truthful, and if she'd go to court and testify if it was true. Ms. Espido affirmatively answered each question. Ms. Cecil then said to her that Flanigan's "would look into it", however the restaurant never contacted Ms. Espido again regarding the matter, and the harassment continued until Flanigan's quietly transferred Munoz one month later to another store location.

15. This transfer, however, did not prevent management from having Munoz continue working at the Davie location on an as-needed basis, nor did this new arrangement provide protection for Ms. Espido, as Munoz continued to harass her both on his scheduled work and personal time at the Davie restaurant.

16. Following the meeting with Ms. Cecil and the general manager and assistant general managers, the retaliation against Ms. Espido began in earnest. The Davie General Manager Ellaina Gomez stated in a staff meeting in which Ms. Espido was present that "someone was calling corporate and complaining about sexual harassment" and that "someone was just 'trying to get attention' and it wasn't appreciated [by corporate]".

17. Further, Ms. Gomez told Ms. Espido in front of the other staff members to "keep calling them [the corporate office]. I don't care. You're just putting yourself out there." Ms. Gomez then continued her efforts to have Ms. Espido terminated.

18. Ms. Gomez refused to provide the Ms. Espido with necessary uniform items provided to the other staff members by the restaurant on St. Patrick's Day, and had Ms. Espido drive to various stores to "figure it out" and that "it's not my problem" that she was not supplied the same uniform items as the other staff members.

19. Ms. Gomez told her to "leave me [Ms. Gomez] alone" and to "go to Ross ad buy your own" when Ms. Espido asked for help in obtaining the required uniform that was supplied to every staff member except for her. Ms. Gomez then sent Ms. Espido home early, and then suspended her for two days without pay due to the St. Patrick's Day uniform matter.

20. Ms. Gomez removed Ms. Espido from the schedule completely, and then scheduled a staff meeting during this time and terminated Ms. Espido for not showing up to the staff meeting when there was no way she should have known a mandatory meeting occurred. Ms. Gomez then withheld Ms. Espido's paycheck, and refused to release her pay, even after the she contacted the Flanigan's human resources manager, Ms. Kaufman.

21. For next three weeks Ms. Espido attempted to communicate with Davie's general manager and their corporate office to determine if she had been terminated or to obtain her final paycheck. Ms. Gomez refused Ms. Espido's phone calls and attempts to meet, withheld her paycheck, and also refused to allow the assistant general manager, Scott, to have contact with Ms. Espido or release her paycheck. Scott also was advised to let the customers and staff know that Ms. Espido was considered a "no re-hire".

22. After those three weeks passed, she again contacted Ms. Kaufman and Ms. Kaufman assured the Ms. Espido that they would have Ms. Gomez contact her, however that never happened and Ms. Espido was still unpaid and unclear for the reason for her sudden inexplicable termination.

23. After Flanigan's corporate or Davie's managers failed to respond, Ms. Espido finally made an unannounced appearance at the Davie restaurant, where Ms. Gomez forced her to sign three written disciplinary actions in order for her to obtain her paycheck. Ms. Gomez would not release Ms. Espido's paycheck without a signature on the factually false and previously unseen disciplinary statements.

24. Ms. Gomez would not provide Ms. Espido with copies of the disciplinary actions citing that the copies were "legally Flanigan's property." Ms. Gomez further demanded that the Ms. Espido give Flanigan's her personal apron and nametags, though they were Ms. Espido's personal property. Ms. Gomez then told her that she was no longer permitted on Flanigan's property and to stay away from the restaurant.

25. Staff witnesses to these events and to Ms. Espido's allegations were pressured to withdraw their statements as Flanigan's suggested that they too would be either terminated or their chances of advancement would be severely hindered.

26. This action by Flanigan's resulted in witness Amanda Burrage retracting her statement. She was then temporarily promoted after changing her story.

## COUNT I (PLAINTIFF ESPIDO'S TITLE VII SEX DISCRMINATION)

27. At all times relevant, Plaintiff Espido and the Defendant were covered by the requirements are prohibitions of Title VII, specifically 42 U.S.C. §2000e-2(a)(1).

28. Plaintiff was discriminated against in the course of her employment as described above in the factual allegations.

29. The wrongful conduct of the Defendant, as described herein, constituted gender discrimination and resulted in disparate treatment contrary to Title VII.

30. As a direct and proximate result of the Defendant's unlawful actions, as described above, the Plaintiff has suffered the following injuries and damages: (a) Lost compensation, including wages and benefits; (b) Severe emotional distress, including fear, anxiety and depression; (c) Loss of reputation; (d) Loss

of dignity and self-esteem; (e) Loss of earning capacity; and (f) Other damages to be determined.

31. Plaintiff additionally seeks attorney fees and costs as provided for under Title VII.

32. The Defendant's discriminatory practices were done with malice or reckless indifference to the federal and state rights afforded to aggrieved individuals, and accordingly the Plaintiff seeks leave to request punitive damages under Title VII.

### COUNT II (PLAINTIFF ESPIDO'S TITLE VII RETALIATION)

33. At all times relevant, Plaintiff Espido and the Defendant were covered by the requirements and prohibitions of Title VII, specifically 42 U.S.C. §2000e-3(a).

34. Plaintiff was retaliated against in the course of her employment for protesting discriminatory activities that warrant protection as described above in the factual allegations.

35. The wrongful conduct of the Defendant, as described herein, constituted retaliation and resulted in her unlawful termination contrary to Title VII.

36. As a direct and proximate result of the Defendant's unlawful actions, as described above, the Plaintiff has suffered the following injuries and damages: (a) Lost compensation, including wages and benefits; (b) Severe emotional distress, including fear, anxiety and depression; (c) Loss of reputation; (d) Loss of dignity and self-esteem; (e) Loss of earning capacity; and (f) Other damages to be determined.

37. Plaintiff additionally seeks attorney fees and costs as provided for in Title VII.

38. The Defendant's retaliatory practices were done with malice or reckless indifference to the federal and state rights afforded to aggrieved individuals, and accordingly the Plaintiff seeks leave to request punitive damages under Title VII.

WHEREFORE, the Plaintiff, Michelle Espido, requests that judgment be entered against the Defendant, Flangian's Enterprises, Inc. for damages, including 1) lost wages and prejudgment interest, 2) compensatory damages, 3) leave to file punitive damages for reckless disregard for the Plaintiffs federally protected rights, and punitive damages where the Defendant had a pattern and practice of activities that warrant an award of said damages, 4) reasonable attorneys' fees and costs, and 5) any other lawful and equitable relief this Court deems to be just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiffs demand trial by jury on all issues triable as of right by a jury.

## Certificate of Service

I hereby certify a true copy of the foregoing document was filed today, July 30, 2014, with the Clerk of Court using CM/ECF which should also effect electronic service on all counsel of record.

Dated: July 30, 2014

Respectfully submitted,

REINER LAW, P.A.
224 Datura Street
Suite 1313
West Palm Beach, Florida 33401
Telephone: (561) 307-8402
Email:mreiner@marcreinerlaw.com
Counsel for Plaintiff

*/s/ Marc S. Reiner*
MARC S. REINER, ESQUIRE
Florida Bar Number 0054072
